## DURANT v. BLACK.

### No. 9998—Opinion Filed Oct. 7, 1919.

(Syllabus by the Court.)

#### Appeal and Error—Evidence—Sufficiency.

Where the only error complained of is, in effect, that the judgment of the court is contrary to the weight of the evidence, the same being a non-jury case, and tried before the court, the rule adopted by this court is, if the judgment of the court is not clearly against the weight of the evidence, the same will not be disturbed on appeal. Held, from an examination of the record, the judgment of the trial court is not clearly against the weight of the evidence.

Error from District Court, McIntosh County; R. W. Higgins, Judge.

Action to recover real estate and to quiet title by William Durant, a minor, against E. L. Black and others. From judgment for defendants, the plaintiff brings error. Affirmed.

Joseph P. Rossiter, for plaintiff in error.

J., L. Maynard and Walter & Hilpirt, for defendant in error E. L. Black.

McCrory, Johns & Shackelford, for defendant in error Sue Gaines.

McNEILL, J. This action was instituted by William Durant, a minor, by his guardian, M. B. Castle, against E. L. Black, M. C. Gaines. et al., for possession of, and to quiet title to 160 acres of land in McIntosh county. The petition alleged that William Durant was a minor, and a freedman citizen of the Creek nation, and the owner of the land in question, and further alleged that the defendants were in possession of the same, and claimed some right, title and interest therein, the nature of said claim being unknown to plaintiff.

The defendants Black and Gaines answered, alleging that on May 20, 1912, E. L. Black obtained from Edmund Durant, guardian of William Durant. a minor, through the county court of Okfuskee county a certain oil and gas lease on said premises, which oil and gas lease was approved by the county court of Okfuskee county on the 20th day of May, 1912, and that the same was owned by Black and Gaines, and that they had fully complied with all the terms of the lease, and had paid all the rentals and royalties due thereunder, and were in possession of the same. The plaintiff replied admitting that at the time the lease was executed to E. L. Black, to wit, May 20, 1912, Edmund Durant was the guardian of William Durant, and further alleged that the consideration purported to be paid for said lease was $80, but that the same was not paid, and there was no consideration paid for said lease. but alleged that a check was given for $50 as payment on said lease, but said check was not paid for the reason of insufficient funds in the bank to pay the same, and further alleged that defendants had never complied with the terms of said lease. Plaintiff further alleged that on July 15, 1912, Edmund Durant as guardian of William Durant executed a second oil and gas lease to E. L. Black for a consideration of $200 upon the same land, and upon the same terms and conditions as the first lease, except the bonus money, which was $200 instead of $80. This lease was also approved by the county court of Okfuskee county on the 15th day of July. 1912. The plaintiff alleges by reason of said facts, both leases were merged, and the first lease became null and void, and was rescinded and was superseded by the second lease. That said second lease provided. if no well was completed within six months, that a certain rental would be due

thereunder, and payable to the lessor or deposited to his credit in the First National Bank of Tulsa, and alleged that the payments had not been complied with. There was a further allegation that the lease of May 20, 1912, was acknowledged by Cunningham, a notary public of Okfuskee county, in Tulsa county, but this question is not argued on appeal.

There were numerous other parties and issues in the case, but none of the questions pertaining to their rights are before this court on appeal, and the issues there involved will not be referred to in the opinion.

After the case had been instituted, G. W. Gaines died, and Sue Gaines was appointed administratrix of the estate of G. W. Gaines and the case revived in her name.

Upon the trial of the case. a jury was waived, and the court found the issues in favor of the defendants and against the plaintiff. While the court made no findings of fact, the court found that the lease executed May 20, 1912, was in full force and effect and that the defendants had fully complied with all the terms of said lease.

From this judgment plaintiff has appealed to this court, and for assignments of error alleges: That the court erred in rendering judgment for the defendants and against the plaintiff, and the court erred in overruling plaintiff's motion for a new trial. While the assignments of error are very indefinite and uncertain, but conceding them sufficient, plaintiff argues the first proposition in his brief as follows:

"Eighty dollars was never paid to the lessor, and this was sufficient to authorize the court to order a resale under section 6388 of the laws of 1910. This is especially true when they concurred in the resale by bidding in the lease and by taking credit for $30 which they claim was paid by them on the first lease."

This may be considered upon the questions: First, did the court err in holding the lease of May 20, 1912, valid, and is such finding of the court contrary to the weight of the evidence? Second, was the lease of May 20, 1912, rescinded and superseded by the lease of July 15, 1912, and therefore became inoperative and of no force and effect after July 15, 1912?

There is very little conflicting evidence in the case. Practically all of the facts are admitted, except as to a few minor details surrounding the taking of the second lease. The facts as we gather from the record are that William Durant was a negro minor and his father Edmund Durant was his guardian. It further appears that E. L. Black in 1912

went to Weleetka to obtain an oil and gas lease on this particular land. He was directed by some of the officers of a bank at Weleetka to see a man by the name of I. H. Cunningham, who could direct him to Edmund Durant, guardian of the minor. He went to see Cunningham, and was advised by him that an oil and gas lease could be obtained on the land for $20, but that it would take a week or ten days in order to procure the same. Black instructed Cunningham that he would pay that amount for the lease. He testified that he went home, and afterwards Cunningham informed him either by letter or telephone that the lease could be obtained for $50. Black informed Cunningham that he would pay that amount for the lease. Thereafter Cunningham again informed Black that other parties had offered $80 for the lease, and he was again informed by Black that he would pay that amount for said lease. The evidence disclosed that Cunningham had obtained the lease in Black's name, signed by Edmund Durant, as guardian for William Durant, and that Edmund Durant had acknowledged the lease before I. H. Cunningham, as notary public, the acknowledgment appearing to be taken in Okfuskee county. Upon advice from Cunningham that the lease was ready, Black went to Weleetka on the 20th day of May, 1912, and he and Cunningham appeared before the county court with the lease. Black signed the lease as the lessee, and the same was presented to the county court and approved by the county court on said day. In the presence of the county court, Black gave Cunningham a check for the money due on the lease, to wit, the sum of $80. The court made an inquiry regarding the sufficiency of Edmund Durant's bond. Cunningham advised the court that he was on the bond and the same was sufficient. The lease was delivered to Black, and the same was filed for record. Edmund Durant, the guardian, was not present at this time. The record further disclosed that it is not disputed that E. L. Black had fully complied with all the terms of this lease. A well had not been drilled within the first six months as provided in the lease, but Black paid the rental required in said lease by depositing the same in the First National Bank of Weleetka to the credit of Edmund Durant. All these payments were made as required by the terms in said lease, and there was no default therein. The evidence discloses that Cunningham on that day paid Edmund Durant $30 in cash and on May 9, 1912, gave him a check for $50. This check went to protest. Exactly when it was presented to the bank and protested does not appear. Thereafter, and it appears, without the knowledge and

consent of E. L. Black, Edmund Durant met Cunningham, and presumably to get the $50 on the check, which had not been paid, and Cunningham informed him that the lease which had been given to Black and approved was invalid for the reason that he as notary public had taken the acknowledgment in Tulsa county and not in Okfuskee county, and that he would fix a new lease, and he would raise the bonus $100. The new lease was drawn and taken in the name of E. L. Black and dated July 15, 1912, and approved by the county court on July 15, 1912. Black was not present at this time. Cunningham and Durant both testified at this time that Cunningham gave Durant $70. Durant testified that this was a payment on the second lease. Cunningham stated he was not positive, but he thought the $70 was to pay on the second lease. As to what became of this lease, the evidence is not clear, at least the same was never filed for record. Black testified that he never knew such lease was in existence until after this suit was filed and a deposition taken when said lease was exhibited. That he had never authorized any one to take it, and did not know it was taken. As to where Cunningham got the $70 to pay for the second lease, does not appear, although he testified he had paid Durant $200 on this lease. This lease provides that if no well was drilled within six months, the rental might be paid to the lessor or deposited to his credit in the First National Bank at Tulsa.

Sometime after taking the last lease, Edmund Durant was removed as guardian, and M. B. Castle appointed as guardian of William Durant. Cunningham was asked whom he was representing at the time of taking the lease dated July 15, 1912, and he answered, he presumed he was acting for E. L. Black, but there is no testimony that he was ever instructed to take the lease for Black, or that he ever communicated any of these facts to Black, but he did testify he sent the second lease to Black. There is no evidence that Black was ever informed that the lease dated May 20, 1912, which Cunningham had taken was signed and acknowledged in Tulsa county and not in Okfuskee county. There was some evidence that one of the parties to this action had talked to Mr. Gaines, asking him which lease he and Black were claiming under, and Gaines stated the first lease. As to whether this evidence was admissible in view of the fact that Gaines was dead at the time of the trial, is not necessary for us to determine, as at most it would only make the evidence in the case conflicting, and by considering said evidence, the court found that the first lease was in full force and effect and that the terms

thereof had been complied with, and that the same was not rescinded or superseded by the second lease. We think this finding is not clearly contrary to the weight of the evidence, but is supported by the weight of the evidence. There is no allegation of agency alleged in the petition, that Cunningham represented Black in the taking of the second lease or that Black knew that said lease was being taken, except what is stated above.

Upon the issue of quieting title, this would be a non-jury case, and triable before the court, and the rule followed by this court in non-jury cases is:

"If the judgment of the court is not clearly against the weight of the evidence, the judgment of the court will not be disturbed." Board of Comm'rs of Woodward County v. Thyfault, 43 Okla. 82, 141 Pac. 409,

and an unbroken line of decisions of this court holding to the same effect.

We must therefore conclude that the judgment of the court, wherein he found: First, that the lease dated May 20, 1912, approved by the county court of Okfuskee county is a valid and binding lease and that the defendants Black and assigns have complied with all the terms and conditions thereof, is not clearly against the weight of the evidence.

Second, that the finding of the court that the lease of May 20, 1912, was not rescinded or superseded by the lease dated July 15, 1912, is also not clearly against the weight of the evidence.

The other questions argued by plaintiff in error become immaterial, as the findings upon these two questions settle all the issues in the case.

For the reasons stated the judgment of the district court will be affirmed.

OWEN, C. J., and RAINEY, KANE, JOHNSON, PITCHFORD, and HIGGINS, JJ., concur.